of Columbia et al, Appellants. Ms. Alokan for the Appellants, Mr. Gura for the Appellees. Ms. Alokan for the Appellees, Mr. Gura for the Appellees. Good morning, Ms. Alokan. Good morning, and may it please the Court. My name is Lauren Alokan, and I represent the District of Columbia. I would like to reserve three minutes for rebuttal. Are you still appealing this case, or are you dropping the appeal? So, we believe that there is a jurisdictional defect. No, no, I'm wondering what you're doing down at the District Court. That's why we asked you to address it. Sure, down at the District Court. You took action to reassign a case in the District Court when you had an appeal up here. I assume you were withdrawing your appeal then. Not at all, Judge Silverman. What were you doing down at the District Court? We recognize that while the preliminary injunction proceedings are on appeal, the District Court could still proceed on the merits, and so we wanted to ensure that any further merits... How could they when we have jurisdiction? There are several cases in which this Court has recognized that P.I. proceedings are collateral to the underlying merits, and so the merits could go forward. And so we hope that they won't, but we just wanted to protect our rights and make sure that if anything were to happen in the District Court, it would be before a properly authorized judge. Now, to be sure, that has nothing to do with the jurisdictional question that this Court is here confronted with. We think that this Court should look at the assignment statute and conclude that Judge Scullin lacked authority because he was not designated by the Chief Justice, nor was there a certificate of necessity put forth by the Chief Judge of the Court, and such that Judge Scullin was acting just without authority, and so his order is void. Now, if I may, the District took this appeal to correct fundamental errors in Judge Scullin's decision to grant a preliminary injunction against the District's good reason requirement for carrying a firearm on the District's crowded city streets. As you've noted, Judge Silverman, while on appeal, this Court noted a jurisdictional issue, and because that's logically antecedent to the merits, I would like to address that first. So, as I have begun to state, Judge Scullin lacked authority to preside over the preliminary injunction proceedings because the Chief Judge of this Circuit never certified that a visiting judge was necessary for this case, and the Chief Justice of the United States never designated him to sit on this case. In the absence of those statutory prerequisites, Judge Scullin had no authority, and so this Court, as the Supreme Court did in Fradd, must hold that the order is void and remand the case for preliminary injunction proceedings to be held before a properly designated or authorized judge. I think that Fradd is the case that controls this most expressly. There, you had a situation much like here, where there was an EDNY judge sitting in the SDNY by designation on a particular case. After that designation had expired, it was a criminal case, the probationer went back to the judge that was in the EDNY and asked him to vacate his probation. The EDNY judge purported to act as an SDNY judge. He brought the SDNY probation officer in, he captioned his ultimate order releasing the defendant from probation as an SDNY order, and he filed it with the SDNY clerk's office. But what the Supreme Court held was that because the judge was not acting in the SDNY pursuant to a valid assignment, the judgment was void. But Judge Scullin was operating pursuant to the assignment of the Palmer case, and under Section 296, a designated judge performs all judicial duties for which he's designated and assigned, including any duty which might be required of a judge of the court or district or circuit to which he's assigned. And the judges in this district routinely do take related cases under the local civil rule, so why is that not part of his assignment? So absolutely, Judge Pillard, a couple of responses to that. First, that was the same situation as in Fratt. The probationer would routinely return to the judge who presided over the criminal proceedings, and the Supreme Court held that that didn't matter because what you have to look at is the assignment statute. And that's because there are important policy considerations in the assignment statute. The president nominates a judge for a particular jurisdiction. The Senate confirms that judge for a particular jurisdiction, and with few exceptions, the judges are required to live in that jurisdiction. And that's because there's an interest in local cases being decided by local judges. Now, of course, the assignment statute understands and appreciates that in certain limited circumstances, such as where there's a vacancy by death of disability of a judge or where there's a recusal situation, there may be a need to bring a judge from outside the jurisdiction into the jurisdiction to sit on the case. But that's only for extraordinary circumstances. And I think to get to the other heart of your question about the related case rules, to be sure Judge Scullin, when acting pursuant to a proper designation, was to carry out all of the local rules. But the jurisdictional statutes provide that he can only sit where designated. And if you look, I believe it's at A1 of our supplemental brief, the certificate of necessity designated to work on the Palmer case, did it specifically by docket number, did not include the Wren number. Same thing with the Chief Justice's certificate assigning Judge Scullin to the case. It specifically authorized him to work on the Palmer case and not on the Wren case. But you have designation to deal with an overload of business, a backlog of business, and the reason for the related case rule is to efficiently deal with the business of the court. It would seem like it's quite consistent with a designation for 10 enumerated cases to say, and whatever goes with that ball of wax. And so it seems like it's quite in line with the policy that supports the designation to have the visiting judge use the designated case rule. So I have three responses to that. First, had the certificate of necessity said this case and related cases, we'd be in a very different circumstance. Of course, we'd still have the Chief Justice needing to assign Palmer and Dahl-related cases. So we don't have that here. But a legal response, my second response, is to look to Judge Kaczynski's opinion in the motor fuels litigation case. And that was, if you'll give me a minute to explain, sort of a long procedural history. It was a panel on multidistrict litigation that had handled all the pretrial proceedings for a particular case. And then under the rules for multidistrict litigation, the case is supposed to go back to the original district court for trial. There, the judge who presided over the multidistrict litigation offered- Could you go a little slower, Counsel? I'm having a little difficulty following you. I know that I have a little time, so I'm trying to cram a lot in. But I will certainly go slower. You'll have as much time as you need. Well, thank you. I appreciate that. The presiding judge is very gracious and kind. I have no doubt. So in that case, when the case was supposed to be remanded to the trial courts in California, the judge who had presided over the multidistrict litigation volunteered and said, it would be more efficient for me to preside over this case. I know it. I know the parties. I presided over all the pretrial proceedings. And what Judge Kaczynski said, is that interest in efficiency, which is akin to the efficiencies realized in the related case, is not sufficient. The assignment statute requires that it be necessary or that there be a necessity to have a judge coming from outside of the jurisdiction. And Judge Kaczynski said, you need to read that narrowly. And we think that's right, because there is an interest in local judges presiding over local cases. Wait a minute. The whole question is what the Chief Justice did here, isn't it? We don't second guess the Chief Justice's determination as to whether another judge is needed. And that's exactly right. You're making this argument as if, gee, we want to emphasize local control and we want to emphasize that other judges come in only when it's absolutely necessary, as if we were reviewing the Chief Justice's designation. Not at all. So the only question is whether the Chief Justice's designation covered this case or not. It did not, as I noted. Isn't that the only issue? Exactly. In A1 and A2 of our brief, we have the certificate of necessity that was authored by the Chief Judge of this circuit. He designated that there was a necessity for Judge Scullin to work on just the Palmer case and some other cases, to be short, but not the Wren case, which is a different docket number, a different case. Indeed, that case concerned a law that hadn't even been passed at the time that the certificate of necessity was authored, assuming that Judge Scullin would work on Palmer. Next, you have the Chief Justice's letter designating Chief Judge Scullin. And again, that specifically enumerates the cases to which Judge Scullin was assigned. That included Palmer. It did not include Wren. So absolutely, Judge Stillman, I think that ends the inquiry. But just so that I could finish with a third response to Judge Pillard, the reason why we know that this Court doesn't routinely have designated judges work on related cases is that we surveyed cases on the docket that Judge Scullin had been authorized or designated to work on. So in the cases that we found, they fell into three broad categories. First, there was a case that was assigned to Judge Scullin, pursuant to a valid certificate of necessity and designation. When a second related case came in, there was then a new certificate of necessity and a new designation, such that he could then work on both of those cases. In another situation, there were three cases that had been deemed related prior to when Judge Scullin was designated and assigned to them. The certificate of necessity and the letter of designation spell out the docket numbers for each of those three cases. So we know that there's not a routine practice in this circuit of saying there are alternative ways. Suppose there were. Would that make any difference? I think that had there been a certificate of necessity that said, Judge Scullin is assigned to the Palmer case and all related cases. No, no, no, no, no. That's not what we're talking about. You're talking about was there a practice of doing this or not. And I said suppose there was a practice. Would that cure the defect? I don't think it would. I just highlight this to show. I know I don't think it would. I think the lack of the specification of the Wren case number on any certificate of necessity or on any letter of designation by the Chief Justice means that Judge Scullin lacked authority to preside over the case. And that, in and of itself, renders the judgment void. That requires this court to remand the preliminary injunction proceedings back to the district court so that a properly authorized judge can review it in the first instance. Should we get to the merits? What do you think, boss? I have one question on the merits. Absolutely. You argue that the statute restricting authority to carry or bear arms is allowed in an urban jurisdiction where it would not be allowed in a non-urban jurisdiction as a matter of constitutional law. Is that correct? Our position is that when you look at the right that was codified in the Second Amendment, Just answer yes or no to that. We believe that the right is more circumscribed in cities. Yeah, that's your point. All right, now I'm a little puzzled on how you draw lines. If that were the constitutional rule, how would you draw lines? Would it depend on a particular jurisdiction as to how rural it is? So I don't think the court needs to answer that question. Well, I want you to answer the question. If your constitutional principle is right, you do have to answer that question. And so as a matter of constitutional principles, the Second Amendment codified a pre-existing right. Counsel, you're not answering my question. How do you draw a line? I draw the line the same way that early American and English authorities did, which is in urban areas. What do you mean in urban areas? If you had an area that was partly urban and partly rural but the same jurisdiction, would the Constitution allow a restriction in certain streets but not in other streets because it's rural? I think that could be jurisdiction-wide, and I would look to Kuchelski and Woolard and Drate for that because those were statewide bans in New York, Maryland, and New Jersey, which included both urban and rural areas. So then your argument is not limited to urban areas. In the district, which is an exclusively urban jurisdiction. You're talking about a constitutional principle, not just a special rule for the District of Columbia. Absolutely. I'm puzzled at how you draw the line. For instance, Honolulu is a city and county of Honolulu, so it's a whole island. So if Honolulu were to adopt your rule, how would it draw a line between the urban part of the city and county and the non-urban part? And it would go down through certain streets? You would not be able to carry a gun, but if you crossed the street, you would be able to? I think the Honolulu legislature would need to look at that. I presume they would do what New York, New Jersey, and Maryland did, which is to say, as a county-wide or statewide issue, we think that the public safety concerns of carrying a weapon on the urban streets are such we should have. In other words, you do it statewide because you can't draw a line limiting it to urban areas. That very well may be, but of course— Okay, so then your argument goes out the window. I don't think so. The district is an exclusively urban jurisdiction. No, it isn't. No, it isn't. There are suburban areas in the district. Well, there are some parts that are under federal control, like Rock Creek Park, but no one is disputing— But also lots of urban areas. No one is disputing that the district is exclusively an urban jurisdiction. The plaintiffs do not as well. But the question is whether, when the second amendment was codified in 1791, there were preexisting limitations on the right to regulate firearms in urban areas and city streets. And we've demonstrated in our brief and in the Everytown Brief and Appendix that since 1328, there have been significant regulations such that the right is circumscribed outside the home. And based on that, we think under any level of scrutiny— Thank you, Kat. Thank you, Kat. Thank you very much. Thank you, Ms. Aligata. Good morning, Mr. Gura. Good morning, Your Honors. You may please the Court, Allen Gura for the appellees. There is at least one point that the city made with which we agree, and it relates to a point that Judge Silverman made here with which we also agree. First of all, with respect to the city, the city's briefing tells the Court that it should not lightly go into conflict with other circuits. And, of course— You may want to start with the jurisdiction. That is a jurisdictional point, Your Honor. And Judge Silverman tells us that—and I think it's correct— that the main question here with respect to Judge Scullin's appointment is what did the Chief Justice do when he appointed—designated Judge Scullin to perform judicial duties in specifically the Palmer case? There is no question whatsoever that that designation to perform judicial duties was not qualified in any way. Judge Scullin had the absolute obligation to take related cases. Even if he disagreed with our designation under Rule 40.5, the committee could have sent the case back to him if it felt that it was indeed— So if there were sequential modifications of the D.C. law on carrying, each time the D.C. counsel wrote a new law dealing with this subject, it could be assigned to the same judge? Not necessarily. The difference is— No, no, no, not necessarily. Could it be? It would not be an automatic rule. What made it related here was that this new law was in fact before Judge Scullin because it was a subject of proceedings before him. The question was whether or not the new law complied with his order in Palmer, whether or not— You seem to now be arguing that the calendar committee of the district court, by making a determination as to relatedness, can expand the authority granted by the Chief Justice. No, I'm not saying that, Your Honor. What I'm saying is that when the judicial duties that are assigned to Judge Scullin, there are judicial duties assigned to him, he agrees to undertake them. Those judicial duties— What were the words here on this designation? To perform judicial duties, I believe. That's not near all the words. To perform judicial duties, you could run right back off the case. No, in a particular case. What did they say in this case? I don't have it directly in front of me, but I believe it's to perform judicial duties in the following cases and also to complete such other business, which is not really the language on which we're relying. But when this came across his desk, it came across his desk as the judge in Palmer. And what I was getting to was trying to relate the issue to what other circuits have done. And this is a subject which did not come up in Counsel's argument. I didn't hear any reference to the judge de facto doctrine. We've had two circuit courts, both the Third Circuit and the Ninth Circuit sitting en banc, hold that an improper designation or a defect in the designation is not jurisdictional but rather a ministerial act which can be cured with a non-proton order. That's a defect in the designation. Here the question is more like Fred, which is the Supreme Court. This goes outside the designation. The question is whether it's outside the designation. And the Supreme Court did use the language of jurisdiction in Fred. Are you saying the Supreme Court's wrong in Fred? No, I'm saying the Supreme Court's right in Nguyen, which is the case that's more directly on point. Fred is a very different type of designation than we have here. Nonetheless, it was a designation in a very similar form. It was a designation to perform certain judicial duties. The argument there was that he went beyond it as to date. Here it's a designation to perform certain jurisdictional duties. The argument is he went beyond it as to case number. Why is not the question of whether or not it's jurisdictional precisely the same question in each instance? Actually, I would raise the question whether yours is a fortiori. I think Judge Sentel's point is absolutely correct, but yours is even weaker than Fred. No, Your Honor. First of all, I believe there are two, fragmenting two points in Judge Sentel. The first point as to whether or not the designation was effective because it expired relates to this court's first question. The other point that Fred made, which relates to this court's second question, is a jurisdictional question. When it comes to jurisdiction, the question is even if it was expired, even if it was not appropriate to sit in this case, even if there was some problem with the designation, the question is does it make a jurisdictional difference? And Fred said it did, didn't it? In the Fred circumstances, it did. It was outside the designation. The action was taken outside the jurisdiction, outside the designation. Therefore, the judge had no jurisdiction. That is the circumstances of Fred. However, Fred did not undo McDowell. It didn't undo Ball. What did McDowell do that had something to do with this case? The question there was the judge de facto doctrine, which is a different question altogether. Altogether a different question, yes. Even if Judge Scullin had no authority to enter this order, even if the designation had expired or didn't extend under Rule 40.5, even if there was some kind of problem, and even if the court doesn't wish to do what other courts have suggested, which is to simply see if this could be remedied with a non-quotunct order, which is actually something that the Third Circuit did in the two-guys case. But even if there was some defect, then the question becomes jurisdiction. And when it comes to jurisdiction, Fred does not undo the judge de facto doctrine. The problem with Fred is that the judge in Fred exercised the jurisdiction of the wrong court. Having expired in the district where he was appointed, he went back to the Eastern District and kept on trying to do things from that district. And this is what the Ninth Circuit explained. I don't understand how the de facto doctrine can possibly cure a lack of jurisdiction. Either a court had jurisdiction or it didn't. It is a jurisdictional doctrine, Your Honor. The issue is that appointments, designations, are not in and of themselves jurisdictional. These are ministerial technical designations. If they're not, then why did the Supreme Court use the language of jurisdiction in Fred? Because in Fred, the wrong court's jurisdiction was exercised. It was wrong because he was outside the designation. And I don't understand the distinction you're trying to draw there. Because here, to the extent that Judge Scullin was not performing judicial duties in the listed cases in the Chief Justice's order, he was acting as a judge of the Northern District of New York. So it's the same defect. No, Your Honor. We would not see it that way. We would assert that when he took on, as a related case assignment, the Wren case, this case, he did that in the Palmer case. He was a judge in Palmer, and he goes to work as a Palmer. That just begs the question. You're just asserting the conclusion that you want. But he was designated to perform judicial duties in Palmer, not in Wren. And we're trying to decide whether his performing of judicial duties in Wren. And I thought you were relying on the related case rule for that. And he wasn't authorized to take related cases. And we have evidence that when the Chief Justice wants to specifically authorize for related case considerations, that happens. Well, Your Honor, even if the related case rule would not be enough to bring Wren within the designation that Judge Scullin had, the question then becomes, and this is the Court's second question, is there a jurisdictional impact on that? And that is answered by the Nguyen case, which is a Supreme Court case from, I believe it's 2004. And they survey all the various jurisdictional statements that have been made over the years by themselves and other courts, and they come to the following dividing line. And here's the test. The test is. Can you give me the citation for what you're making? Sure. This is Nguyen. This is 539 U.S., and it's on page 79. This is a case where it's, you know, there was a judge who sat improperly in a Ninth Circuit panel, but he was an Article IV judge from Guam. An Article IV judge. An Article IV judge, a territorial judge. Yeah. And the Supreme Court, surveying the cases, said the following. The difference between irregular judicial designations, which are encompassed by the de facto doctrine, and the, quote, impermissible designations is, quote, the difference between an action which couldn't have been taken if properly pursued and one which could never have been taken at all, close quote. That's the difference. So could Judge Scullin, even if he was improperly designated. Wait a minute. What was the holding in that case? The holding in that case is that it was impermissible because. Because the Article IV judge was like a person pulled off the street. Essentially. And so I had no judicial authority, so there's no jurisdiction of the panel. That's correct, but Article III. And this is the case you're citing in your favor. Yes, because we have an Article III judge. Judge Scullin is a confirmed district court judge. He could have been appointed. There's a statute that allows him to be appointed. There is no question that we can still, even tomorrow, get an order from Chief Justice Roberts, non-quote-unquote, appointing him to the red case, and all would be okay. And we have cases that stand for that proposition as well. Nobody got one, did they? I was about to ask that question. Do you have such an order? I don't have such an order. Perhaps we should go ask for one because this is something that. . . Since there isn't one, it's not really relevant, is it? Well, it is relevant to this. Isn't it a little late now, at a time of oral argument, to suggest you might have gotten an order from the Chief Justice? No, it's relevant today, this argument, for this reason. The very fact that such an order is even available, the very fact that such an order could have been entered at any time, suggests that this is a judge who could have been appointed to the case. And because he could have been appointed to the case, and the district is well aware. . . Well, the judge could have been appointed. But that's what makes him a judge de facto, which cures any problem in an improper . . . Where do you have a case where there was such a curative action? You're giving me a case where they didn't find he could do it. Okay, how about . . . I can give you several cases, and we've cited them. How about Leary? This is a case where you had a . . . Well, it wasn't the curative order. The curative order actually was in two guys. This is a Third Circuit case. If you look at footnote 1, and the site for that case is 266 F. 2nd. 427. It's a very long footnote 1. And let me read for you the third full paragraph in that. 266 F. 2nd. 266 F. 2nd. 427. This is Chief Judge Biggs of the Third Circuit writing, In preparing the opinion of this court, the fact that Judge Welch's designation had terminated on May 20th, 1958, appeared, and on February 17th, 1959, the present writer, the Chief Judge, filed an order in the court below giving Judge Welch's general designation to the court below, not the pro-tunc as of May 21, 1958, and that cures the problem. It goes on to say, Such defects have been held not to constitute a bar . . . Assuming that that could have been done in this case, we come back to the fact that it wasn't. Yes. Which is not . . . We had a not pro-tunc thing. That's right, but the fact . . . It's not pro-tunc work, but . . . You're on a foul of the ancient legal principle. If my aunt had wheels, she'd be a trolley car. Yes, well . . . But we're not on a foul of the not-so-ancient legal principle in Union v. United States, which states that if a judge could have been appointed, he's a judge de facto. Thank you, Mr. Gura. Did Ms. Alikhan have any time remaining? We'll give you one minute. Thank you, Your Honors. I just wanted to clarify a couple of questions. First, Judge Sentell, you asked what the language of the designation said. It's on A2 of our supplemental brief, and it says that Judge Scullin is authorized to perform judicial duties in the United States District Court for the District of Columbia in, and then it lists, ten cases. Wren, notably, is not one of those cases. Secondly, we do not believe the de facto judge doctrine applies, and we think that Wren is an opposite for a couple of reasons. First of all, Wren proves our point, that when a judge is not authorized or does not have the authority to take judicial actions, that decision is void. And in Wren, it's particularly important that there was a quorum of authorized judges, and the parties didn't raise it until, I think, very far into the proceedings, the rehearing petition at the Ninth Circuit, if not the Supreme Court, and the Supreme Court said it was still required to hold the judgment void and remand for normal proceedings. And finally, we think that the Two Guys case, to the extent to which there could be some attempt to correct this nunk-pro-tunk, Two Guys is not availing. There, it was a senior judge who was authorized to sit in that district, and so he only needed the authorization of the chief judge of that court. So the chief judge, in that footnote, says, I did intend him to sit. Here, with a situation where the judge is out of the circuit, you need the chief justice, and here we don't have any indication that either the chief judge or the chief justice wanted Judge Scullin to preside over the Wren case. Thank you. Thank you, Senatorcom.
judges: Pillard, Silberman, Sentelle